In the matter of H———————— C——————, Jr., a master in chancery.

[Decided December 6th, 1912.]

1. Annexed to a bill for injunction and relief was an affidavit made by a master in chancery setting forth, among other things, that a man and woman, whom he did not know, called upon him and represented themselves to be A. Di S. and wife, and requested him to draw deeds for a property standing in the wife's name to one T. A. and from him to A. Di S., the alleged husband. All this was done; the master taking the acknowledgments of the parties to the respective deeds, and they were after-

*11 Buch.*    In the matter of H. C., Jr., a master in chancery.

wards recorded. Thus it appeared that the master did not know A. Di S. and the woman (who, in fact, personated his wife) ; but as it appeared that he might have known T. A., the chancellor wrote him a letter of inquiry, to which he replied that T. A. was introduced to him by A. Di S. on the day the deed from him (T. A.) to A. Di S. was executed and acknowledged. It then appearing that the master did not know any of the parties executing and acknowledging the instruments, for want of acquaintance with A. Di S., a rule was made requiring him to show cause why he should not be deprived of his office of master in chancery and why his commission should not be superseded and returned into court to be vacated and canceled, or why he should not be otherwise disciplined and punished for his unlawful execution of his office. Upon the return of the rule the master showed by credible evidence that he in fact did know A. Di S. prior to drawing and taking the acknowledgments to the conveyances, and that the woman who falsely personated his wife was introduced by him to the master as his wife, and that he also introduced T. A. to him. The master's excuse for making the misleading affidavit, which was drawn for him by the complainant's solicitor (apparently without fault on the part of the solicitor), was that while it did not exactly meet with his approval, he signed it in order to save delay and in the belief that he would soon be called as a witness in the case when he could go into details and make an explanation. Upon all the foregoing facts—*Held,* that the master's conduct, grossly careless and reprehensible as it was, does not involve moral turpitude ; and that the proprieties of the case do not require the revocation of his commission as master in chancery or that he be otherwise punished ; sufficient discipline, in the court's opinion, arising out of the exposure of the matter and the censure herein and hereby visited upon him.

2. Before a master in chancery or other officer entrusted with that power and authority, may take acknowledgments to deeds of conveyance and other instruments under section 22 of the act concerning conveyances (*Comp. Stat. p. 1542*), he must be satisfied that the party making the acknowledgment is the identical grantor named in the instrument ; he cannot be so satisfied unless the grantor is known to him ; he need not be well known, he may be only casually known ; but in one way or another he must be known, that is, the officer taking the acknowledgment must be satisfied in his conscience that the party making it is the identical person named in and who executed the instrument. Knowledge of the grantor may be acquired by introduction from one with whom the officer is acquainted, and in whom he has such confidence that he has no doubt but that the person introduced is the person he is represented to be. If in such a situation the officer is purposely or innocently deceived, no criticism can properly be leveled against him. His action in certifying an acknowledgment after such an introduction of the grantor would be blameless, even if he were deceived. When a man appears before an officer, introduces himself, produces an instrument which he says he desires to execute, if then the officer takes and certifies an acknowledgment—certifies that he is satisfied that a perfect stranger is the identical grantor named in the instrument—he solemnly certifies to an untruth and should be deprived of his office, or otherwise appropriately punished ; and it seems he would be liable for damages sustained by reason of his false certificate, if in fact the grantor was falsely personated.

On rule to show cause why a master's commission should not be revoked for unlawful execution of ·his office.

WALKER, CHANCELLOR.

A bill was recently filed (*Di Sapio* v. *Di Sapio, Docket 35, p. 191*) in which the complainant alleged that her husband, who was residing separate and apart from her, appeared before H———· C———, Jr., a master in chancery, with a woman whom he represented to be his wife, and informed the master that she was desirous of conveying to him a property, the title to which stood in her name; whereupon Mr. C——— drew a deed from Di Sapio and the woman, describing her as his wife, to one Atellizzi, and a deed from him to the man Di Sapio, and took the acknowledgments to both deeds. The bill, which was filed by Di Sapio's wife, alleges false personation of her by the woman who, with her husband, made the deed to Atellizzi; and prays to have the deed annulled, set aside and delivered up to be canceled.

The bill of complaint was presented to me on an application for a preliminary injunction, and annexed to it was an affidavit by Mr. C——— himself. In it he says:

"A man and woman of the Italian race, who were unknown to deponent, appeared at his office and pretended and represented themselves to be Antonio Di Sapio and Maria Di Sapio, his wife, stating that the said Maria Di Sapio was the owner of lands and premises in the city of Long Branch. in this state; which are .more particularly described in the foregoing bill of complaint, and requesting that deeds be drawn conveying the said lands and premises to the said Antonio Di Sapio; that the said conveyance was made through an intermediary, one Thomas Atellizzi, on the day last-above mentioned, when the said woman, who represented herself to be Maria Di Sapio, executed, acknowledged and delivered a deed of conveyance for the said lands and premises, the said Antonio Di Sapio joining therein, to the said Thomas Atellizzi, dated on the same day and year, who by deed dated on the same day and year, conveyed the said lands and premises to the said Antonio Di Sapio in fee-simple absolute, both. of which said deeds were subsequently recorded in the clerk's office of the county of Monmouth."

The master in his affidavit further says that afterwards he was introduced to Maria Di Sapio, the wife of Antonio, by the solicitor of the complainant, and that she was not the woman who appeared before him in the company of Antonio and rep-

resented herself to be his wife, and who, with him, executed, acknowledged and delivered the deed to Atellizzi.

It thus appeared before me by the master's own sworn statement that he did not know Di Sapio and the woman who represented herself to be his wife, when to a deed from them to one Atellizzi, he took and certified an acknowledgment—including a separate acknowledgment of the alleged wife—which made the instrument evidence and entitled it to be recorded. He did not state, however, that he did not know Atellizzi, but it was to be inferred that he did not.

Now, it appeared to me, that the master did not know Di Sapio and the woman when they called upon him, but that he might have known Atellizzi, and that the latter might afterwards have made him acquainted with Di Sapio and the woman, introducing her as his wife, before the execution and acknowledging of the deed from them, although the presumption was clearly the other way; and, not wishing to do the master an injustice, I wrote him a letter asking him 'if he knew Atellizzi, to which he replied that Atellizzi was introduced to him by Di Sapio on the day that the deed from him (Atellizzi) to Di Sapio was executed and acknowledged.

Upon this state of facts being made to appear, I entered a rule which, after certain preliminary recitals, concluded as follows:

"That at and before the time of the taking and certifying of the said acknowledgments, and since, the said H——— C———, Jr., was unacquainted with and did not know either the said Antonio Di Sapio or the said woman representing herself to be Maria Di Sapio, or the said Thomas Attellizzi; from all of which it appears that the said H——— C———, Jr., took said acknowledgments in violation of section 22 of 'An act respecting conveyances (*Rev. 1898*), which provides that deeds and certain other instruments may be acknowledged before certain officers, including masters in chancery, such officers being satisfied that the parties are the grantors in such deeds or instruments; and it appearing that the said H——— C———, Jr., was not, and could not have been, satisfied that said parties were the grantors in said deeds, that is, the true and lawful grantors mentioned and described in said deeds and that, therefore, he unlawfully executed his office as master in chancery:

"It is, therefore, hereby ordered that the said H——— C———, Jr., do show cause before the chancellor at the state house in Trenton on Tuesday, the 24th of September instant (1912), at 10 o'clock in the forenoon, why he should not be deprived of his office as master in chancery of New Jersey and why his commission as such should not be superseded and re-

turned into court to be vacated and canceled, or why he should not be otherwise disciplined and punished for his unlawful execution of his office as aforesaid."

Upon the return of the rule the master, who is also an attorney and solicitor, somewhat to my astonishment, asserted that he knew Di Sapio previously to his visit to him (the master), on the occasion of his presenting the woman as his wife, and requesting the drawing of the conveyances. His story can better be told perhaps in his own language as it appears in his affidavit on the return of the rule. It is this:

"H—— C——, Jr., being duly sworn according to law, on his oath, deposes and says, that he is a counselor-at-law of the said State of New Jersey, a master of the court of chancery and one of the firm of W. I. & H. C——, maintaining an office in the city of Long Branch, in the county and state aforesaid, where he resides; that on or about the second day of December, one thousand·nine hundred and ten, Mr. Edward Dambrisi, an Italian gentleman, whom deponent had previously known for some time, brought Mr. Antonio Di Sapio to their office and introduced him to deponent in the presence of W—— I—— C——, deponent's father; that then and there the said Antonio Di Sapio stated to deponent that his wife, Maria Di Sapio, was the owner of a certain property on Laird street, in the said city, and that she desired to convey the same to him, her husband; not having her deed for the said property with him at that time, the said Antonio Di Sapio returned later in the day and produced to deponent two title deeds for the said property, showing that the title thereof stood in the name of the said Maria Di Sapio, and said that Mr. Thomas Atellizzi would act as the third party through whom the property might be conveyed; that the said Di Sapio then and there requested deponent to draw deeds conveying the said property to him, and said that if deponent would draw the said deeds they would come up the following day and execute them.

"And deponent further says that he prepared the said deeds as requested, and dated them the third day of December, one thousand nine hundred and ten; that on the day and year last aforesaid the said Di Sapio again called at the said office and informed deponent that they would not be up that day to sign the deeds as his wife had run away, and he requested deponent to hold the said deeds until she returned; that afterward the said Di Sapio called again at the said office on several different days and informed deponent that she had not yet returned home.

"And deponent further says that afterwards, to wit, on the fourteenth day of December, one thousand nine hundred and ten, the said Di Sapio called again at the said office and brought with him an Italian woman, who he introduced to deponent as Mrs. Di Sapio, his wife, and said that they had come up to sign the deed; that deponent talked to her and she told him that she desired to convey her said property to her husband, and that her husband had informed her all about the said deeds; that de-

ponent read over to them the first deed, and she informed him that she could not write her name in English, but would make her mark; that upon referring to the aforesaid title deeds deponent then observed that in one of them the said Maria Di Sapio had there also made her mark; that then and there they executed the said deed for the said property to the said Thomas Atellizzi, dated as aforesaid, and acknowledged the same in due form of law before deponent as a master in chancery, and that thereupon deponent certified said acknowledgments upon the said deed; that before leaving that day the said Di Sapio informed deponent that Mr. Atellizzi was working that week and would not be up then, but that just as soon as he had a day off he would be up and sign the other deed.

"And deponent further says that subsequently, to wit, on the twentieth day of December, one thousand nine hundred and ten, the said Di Sapio called again at the said office and brought with him Mr. Thomas Atellizzi and introduced him to deponent, saying at the same time that he was the man who had come up to sign the deed; that deponent talked to the said Thomas Atellizzi, and when deponent spoke of signing the other deed Mr. Atellizzi replied that that was what he had come up for, that Mr. Di Sapio had told him about it; that deponent read over the said deed to him and that then and there the said Thomas Atellizzi executed the other deed for the said property to the said Antonio Di Sapio, dated as aforesaid, and acknowledged the same in due form of law before deponent as a master in chancery, and that thereupon deponent certified said acknowledgment upon the said deed.

"And deponent further says, that being so acquainted with and knowing the said parties he was satisfied that the said Antonio Di Sapio and Maria Di Sapio, his wife, and the said Thomas Atellizzi were the grantors in the said respective deeds, and that the said deeds were executed and acknowledged according to law.

"And deponent further says that on July 11th, 1912, he signed an affidavit which was attached to and made a part of the bill of complaint in the case of *Di Sapio* v. *Di Sapio et al.*, which said affidavit did not set forth that deponent knew the said Antonio Di Sapio, Maria Di Sapio (the woman who signed the said deed) or Thomas Atellizzi, or that deponent was satisfied as a master of this court that they were the grantors named in the said deeds, at the time of taking the said acknowledgments; that deponent did not exactly approve of the said affidavit at the time of signing it and he so expressed himself at that time to his said father, before whom deponent was sworn; that deponent signed the same, however, to save any further delay, thinking that the solicitors had drawn it purposely in general terms, and expecting soon to supplement it by giving the facts more fully in his testimony at the hearing of the said cause; that deponent returned the said affidavit and bill to Mr. William N. Cooper, one of the said solicitors in the said case, from whom he received them on the day and year last aforesaid, together with a letter stating that the said affidavit did not exactly meet with deponent's approval and giving his reasons as aforesaid for signing the same."

The master's father corroborates his son by an affidavit in which he states he was present when Dambrisi brought Di Sapio

to their office and introduced him to his son; that he was present also the next day when Di Sapio called again and said that his wife had run away, and was present afterwards when Di Sapio called on several different days. He says further that before his son signed the affidavit above referred to he heard him say that it did not exactly meet with his approval, that it was drawn in too general a way, but that he would sign it to save delay, as he expected soon to be called to give the facts at the hearing, and that his son at the time he returned the affidavit to the solicitor sent him a letter to that effect. The master also submitted an affidavit of Lillie Celli, the daughter of Dambrisi, who says that her father, a citizen of the United States, who has lived in Long Branch over thirty years, is now in the kingdom of Italy and will probably not return to this country before next spring. This, of course, was put in to excuse the want of an affidavit from Dambrisi.

The solicitor of the complainant makes an affidavit on behalf of the master in which he states that he prepared a form of affidavit to be signed by him which he mailed to the master for the purpose of having it executed; that it was executed and returned with a letter, which he, the solicitor, had been unable to find, but that his recollection is clear that it said that the affidavit did not exactly meet with the master's approval, but that he had signed it in order to save delay, and that he undoubtedly would be called as a witness in the case and then would go into details more fully. In fact, the complainant has two solicitors and both swear that they saw the letter which the master says he wrote and sent with the affidavit.

It must be admitted that a man who will make an affidavit which he did *"not exactly approve of * * * at the time of signing it"* is very free with his oath, even if he *"so expressed himself at that time."*

When the affidavit which he made for the complainant was sent him, and which did not state the facts truly, as he says, he was at liberty to change it before executing it, so that the truth, which it would seem was of almost vital interest to him, would appear. Why he did not do so he but feebly explains. However, such conduct, grossly careless and reprehensible as it is, does

not, I presume, make a cause of moral turpitude against the person involved.

I greatly fear that some masters in chancery and other officers entrusted with the power and authority to take acknowledgments to deeds of conveyance and other instruments do not fully appreciate their responsibility and do not fully understand what is required of them in the way of executing their office in these instances. The statute (*Comp. Stat. p. 1542 § 22*) provides that certain officers, including masters in chancery, may take acknowledgments of deeds of conveyance and other instruments,

"such officers having first made known the contents thereof to such party making such acknowledgment and being also satisfied that such party is the grantor in such deed or instrument."

Now, it must be perfectly obvious that no one can be *satisfied* of the identity of another unless that other is known to him. He need not be well known, he may be only casually known, but in one way or another he must be known—that is, the officer taking the acknowledgment must be satisfied in his conscience that the party making the acknowledgment is the identical person named in and who executed the instrument. Knowledge of the grantor may be acquired by introduction from one with whom the officer is acquainted, and in whom he has such confidence that he has no doubt but that the person introduced is the person he is represented to be. If, in such a situation, the officer is purposely or innocently deceived, no criticism can properly be leveled against him. His action in certifying an acknowledgment after such an introduction of the grantor would be blameless, even if he were deceived. ·When a man appears before an officer, introduces himself, produces an instrument which he says he desires to execute, if then the officer takes and certifies an acknowledgment—certifies that he is *satisfied* that a perfect stranger is the identical grantor named in the instrument—he solemnly certifies to an untruth and should be deprived of his office, or otherwise appropriately punished. And he is doubtless liable for damages sustained by reason of his false certificate, if, in fact, the grantor was falsely personated. *1 Cyc. 628.*

A well-considered case on the subject under discussion is that of *Wood* v. *Bach, 54 Barb.* (*N. Y.*) *134*, in which the remarks of Judge Cardozo (at *p. 142*) are particularly apposite. He said:

"The statute requires that an officer taking an acknowledgment shall know or have satisfactory evidence that the person making such acknowledgment is the individual described in and who executed the conveyance; but it nowhere prescribes either how such knowledge shall have been acquired, nor that it must have existed for any definite period of time. That being so, who shall fix a rule by which it shall be determined whether the commissioner was justified either by the length of his acquaintance, or the method of forming it, in certifying that he knew the party? Must it not necessarily be a question for the conscience of the officer taking the acknowledgment, and is not that just where the statute meant to leave it, if there were anything at all upon which the officer's conscience could be called upon to act? As no specific period of prior acquaintance is fixed by the statute, who shall say that one month would not be sufficient if the officer taking the acknowledgment so regard it? And if one month, why not an hour, or the moment at which the acknowledgment is taken? It is clear that the right to take the acknowledgment does not depend upon the length of the officer's acquaintance with the person. Is that right dependent on the manner in which the officer's knowledge is acquired? The statute does not say so. The means through which the officer obtains knowledge of the person's identity are not material. One officer might consider a person known to him through a method that another might entirely reject. But in this case the usual means of knowledge were acted on and received by the officer as sufficient.

"Knowledge of persons and their identity is most frequently acquired by introduction through mutual friends, and when such introduction has taken place the parties certainly know each other. Every-day men, in social life, thus become known to each other, and I never heard that such an introduction was not sufficient, or that any length of time after, it must elapse, to justify a statement or certificate that they were acquainted. When an

introduction does not proceed from such a source as satisfies the officer's conscience, undoubtedly he should not certify that he knows the party, but should require 'evidence' which, of course, must be on oath; but when the character of the introducer, whom the officer knows, conveys knowledge to the officer's conscience, he may well be satisfied and may properly give the certificate.

"In this case the parties making the acknowledgments were introduced to the officer, the ordinary way of becoming known, by one in whom he had such confidence that 'he had no doubt' that they were the persons they purported to be. Upon that, in social life, he would have been regarded as knowing them, and knowing them in social life he had the right, if his own conscience were convinced, from that knowledge of their identity, to take their acknowledgments in his official capacity."

Upon this whole matter I have been able to arrive at the conclusion that the proprieties of the case do not call for the removal of the master from his office or that he be otherwise punished; sufficient discipline, in my opinion, arising out of the exposure of the matter and the censure necessarily herein and hereby visited upon him.