83 N.J. Super. 364 (1964)
199 A.2d 869
RUTH IMMERMAN, PLAINTIFF,
v.
ROBERT F. OSTERTAG, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 23, 1964.
*367 Mr. Sanford Halberstadter, attorney for plaintiff.
Mr. Abraham H. Sles, attorney for defendant.
WM. FILLMORE WOOD, J.C.C. (temporarily assigned).
This is a suit by a mortgagee against a notary public for alleged negligence and false representations in connection with the execution of mortgage papers, namely, the mortgage, bond and affidavit of title.
The significant facts are not in substantial dispute. Plaintiff agreed to lend the sum of $9,000 to a corporation by the name of Parkview Grill, Inc., which operated a restaurant in the Township of Union. The loan was negotiated by Constantine Jolas, president of the corporation. As security for the loan plaintiff demanded, and Jolas agreed to furnish, a mortgage executed by the latter's parents, John Jolas and Stella Jolas, on certain real estate owned by them. The mortgage documents were prepared by plaintiff's attorney, Harry Cuttler, now deceased. At the originally scheduled closing time, Jolas appeared at the attorney's office without his parents, claiming that his father was unable to appear because of illness. Thereupon Mr. Cuttler gave the documents to Jolas, with instructions to have them executed by his parents in the presence of a notary public.
Thereafter Jolas, accompanied by a man and a woman, called at the office where defendant (a notary public) is associated with his father, Robert P. Ostertag, in the real estate and insurance business. Defendant had been acquainted with Jolas for several years because Parkview Grill was an insurance customer and defendant had been to the restaurant on occasions to deliver insurance policies and had seen Jolas there. The man and woman were strangers to the defendant. Jolas introduced them as his father and mother and told defendant that they had some papers to sign and requested defendant to notarize the documents. They signed the documents *368 in defendant's presence. The woman, who (according to information given to defendant by Jolas) was unable to write, signed with an "X" as her mark. Someone (probably Jolas) wrote her name beside her mark. Defendant then executed the acknowledgment certificate on the mortgage, signed the bond as witness and executed the jurat on the affidavit.
The certificate of acknowledgment and the jurat were in the usual form. In the certificate defendant represented, among other things, that John Jolas and Stella Jolas, his wife, "personally appeared" before him and that he was "satisfied" that they were the mortgagors mentioned in the mortgage. In the jurat defendant asserted that the affidavit was "subscribed and sworn to" before him.
However, the man and woman did not actually swear to the truth of the contents of the affidavit. Defendant made no effort even to inform them of, or to find out whether they already knew, the nature or the contents of any of the documents they signed. In fact, there was no conversation whatsoever between them and defendant. They said nothing to him, and he said nothing to them. Nor was anything said by them or to them in defendant's presence.
In reliance upon the above documents as executed before defendant, plaintiff disbursed the proceeds of the loan.
There was a default in the repayment of the loan, and plaintiff attempted to foreclose the mortgage. It was then learned that the above mentioned man and woman were not in fact Jolas' parents. They were mere impostors who had apparently conspired with him to forge his parents' signatures. Their true identities were never ascertained by either plaintiff or defendant. When the forgeries were discovered, Jolas disappeared from this area, presumably to avoid criminal prosecution, and his present whereabouts is unknown. Consequently, he was not available to testify in these proceedings.
Plaintiff now seeks to recover from defendant the balance due on the loan. As already indicated, she charges defendant with negligence and false representations. The negligence *369 allegedly consisted of failure to exercise reasonable care to ascertain the identities of the persons who executed the documents, and failure to require such persons actually to swear to the truth of the contents of the affidavit. The alleged false statements are the above-mentioned representations contained in the certificate of acknowledgment.
In so far as plaintiff's claim is based upon alleged false representations in the certificate of acknowledgment, the claim may be dismissed without much ado. Although the representation that John and Stella Jolas had personally appeared before defendant was untrue, there is not a particle of evidence to suggest that defendant knew of the falsity thereof. It is elementary that such knowledge is an essential ingredient of an action for damages for misrepresentation or fraud. With respect to the representation that defendant was satisfied that the persons in question were John and Stella Jolas, there is no evidence that this representation was false.
I move on to the issue of negligence. The extent of the duty owed by a notary public to persons who, although lacking privity with the notary, might be expected to rely upon his actions has never been definitely determined in this State. Although plaintiff and defendant have conflicting views on this issue, each depends upon the case of Motor Credit Co., Inc. v. Tremper, 121 N.J.L. 91 (Sup. Ct. 1938), to support his views. That case expressly held only that an officer who takes an acknowledgment is not "an insurer of the accuracy of his certification to one with whom he has no privity." That holding is of unquestionable soundness. Implicit in the case is the further proposition that an acknowledgment-taking officer has a duty to refrain from acts or omissions which constitute negligence, a duty which he owes not only to persons with whom he has privity but also to any member of the public who, in reasonable contemplation, might rely upon the officer's certification. This latter proposition is also a sound one. A notary is a public officer and, as such, he owes a duty to the public to discharge his functions with diligence. The courts of other states have so held, for example, *370 Commonwealth to Use of Willow Highlands Co. v. United States Fidelity & Guaranty Co., 364 Pa. 543, 73 A.2d 422, 17 A.L.R.2d 943 (Sup. Ct. 1950); Commonwealth to Use of Willow Highlands Co. v. Maryland Casualty Company, 373 Pa. 602, 97 A.2d 46 (Sup. Ct. 1953); Commonwealth for Use of Smolovitz v. American Surety Company of New York, 188 Pa. Super. 513, 149 A.2d 515 (Super. Ct. 1959).
The duty of defendant in the instant case was not dissipated or even mitigated by the fact that the mortgage would have been effective between the parties thereto without any acknowledgment. Plaintiff had a right to rely, and did in fact rely, upon defendant's certification when making the loan. If the acknowledgment certificate had not been executed by defendant, plaintiff would not have disbursed the loan funds.
Being satisfied that defendant notary would be liable to plaintiff for negligence in connection with the execution of the mortgage documents, provided there was a causal relation between the negligence and plaintiff's loss, I turn next to the question whether defendant was guilty of any negligence. I shall consider first the alleged negligence in connection with the certificate of acknowledgment. Plaintiff contends that defendant should have required documents proof of the identities of the signers of the documents before executing the certificate. This contention is based upon a misconception of the nature and extent of a notary's duties. The only duty owed by a notary to the general public is to use ordinary or reasonable care in the performance of his functions. With respect to the identities of signers, the law requires nothing more of the notary than the use of a reasonable care to satisfy himself or, in other words, to become satisfied in his own conscience that the signers are the persons they purport to be. See In re H.C., Jr., 81 N.J. Eq. 8, 15 (Ch. 1912); Smiley v. Hanna, 94 N.J. Eq. 573, 582 (Ch. 1923).
When ascertaining the identities of the document signers in the instant case, defendant clearly met the requisite standard of care. He was informed of their identities by *371 Jolas, a business acquaintance. There is no evidence to indicate that the latter's integrity was, within defendant's knowledge, questionable. It is common practice for people, in both social and business contacts, to learn the identities of strangers through introductions by mutual acquaintances. Such introductions are accepted without question. Acknowledgment-taking officers are held to no higher standard than that of ordinary mankind.
Defendant is guilty of only one act or omission in connection with the taking of the acknowledgment which might be deemed to merit criticism: it is his failure to make sure that the signers knew at least the general contents of the mortgage. It certainly would have been better practice for him to have taken that precaution. However, the law no longer requires him to do so. The applicable law (N.J.S.A. 46:14-6) was amended in 1950 to delete the requirement that the officer first make known the contents of the document to the acknowledging party. L. 1950, c. 278, sec. 1. Although the legislative history of that amendment indicates that the purpose of the amendment was merely to make our form of acknowledgment correspond to the forms used in other states, so as to facilitate the recording in this State of documents acknowledged elsewhere and bearing the form of acknowledgment customarily used at the place of acknowledgment, the effect of the amendment was to release the officer from any obligation to apprise the acknowledging party of the contents of the instrument. This court cannot require that which the Legislature has excused.
I find no dereliction in connection with the execution of the certificate of acknowledgment on the mortgage.
However, the contrary is true with respect to the execution of the jurat on the affidavit. The assertion in the jurat that the affidavit had been sworn to before defendant was patently false.
Administering an oath is a solemn and important act. That act should never be done in a perfunctory manner. On the contrary, the administering as well as the taking of an *372 oath should always be done with utmost seriousness and faithfulness; and, of course, the jurat must be executed with absolute honesty. In fact, a notary public is bound by his own oath to discharge his duties faithfully and honestly. R.S. 52:7-2.
Defendant's conduct, with respect to the affidavit, was a serious breach of duty. Here he was guilty of negligence of the most flagrant sort.
Since people cannot properly swear to the truth of the contents of a document unless they have full knowledge and understanding of such contents, defendant had a duty first to use reasonable care to see that the proposed affiants had such knowledge and understanding. He did nothing of the kind. As already indicated, it was also incumbent upon the defendant to administer the oath expressly and earnestly. He did not do that either.
Despite the high degree of negligence on defendant's part, however, plaintiff cannot recover unless he proves a causal relation between such negligence and his loss. Kulas v. Public Service Electric & Gas Company, 41 N.J. 311, 317 (1964). He has not done so. He was able to offer no evidence whatever to show that the signers of the affidavit would not have sworn to the truth thereof if called upon to do so. On the contrary, it is probable that people who permitted themselves to be introduced falsely and who signed documents under false names would not have shrunk from swearing deceitfully. If they would have taken the oath if requested, then defendant's failure to make the request was harmless to the plaintiff. Ordinarily there is a reasonable presumption that individuals would not commit a crime as serious as perjury or false swearing. However, that presumption loses its force where, as here, the evidence shows that the persons in question lack respect for the truth. At best, one can only speculate as to what the signers in this case would have done; and, of course, plaintiff cannot prevail on the basis of mere speculation.
Accordingly, judgment must be entered for the defendant.