Commonwealth, to use, v. Turner, Exrx. (et al., Appellant).

Argued November 29, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Frederick H. Spotts,* with him *John Sailer* and *Pepper, Bodine, Stokes & Schoch,* for appellant.

*Floyd W. Tompkins,* with him *Harold E. Kohn,* for appellee.

Opinion by Mr. Justice Drew, January 6, 1941:

On July 23, 1936, use-plaintiff, Barbara M. Ulshofer, entrusted to John J. Turner, a notary public engaged in the real estate brokerage business, the sum of $2,000 which he was to invest for her in a first mortgage upon certain premises in the City of Philadelphia. In the following month she received from him a mortgage bond and warrant, to which the name of the owner of the premises had been forged, and which contained an official acknowledgment executed by Turner. He paid interest upon the mortgage to use-plaintiff up to and including the first day of February, 1938, and his fraud was not discovered by her until after his death on July 25, 1938.

Use-plaintiff brought an action of assumpsit in the name of the Commonwealth to her use, averring the foregoing facts, and joining the personal representative of Turner and the surety upon his official bond as defendants. In Paragraph 8A of the statement of claim, incorporated by amendment, she alleged that she accepted the forged mortgage relying upon Turner's notarial certification, and consequently did not demand the return of her money "which was recoverable at that time."

Separate appearances were entered for defendants, but judgment for want of an affidavit of defense was entered against Turner's personal representative. The defendant surety filed an affidavit of defense admitting the essential facts of the fraudulent transaction, but specifically denying the averment of Paragraph 8A that use-plaintiff had suffered a loss because of the false acknowledgment. On the contrary, the surety contended that: "She, has suffered a loss because her trusted agent was false to his trust, embezzled her money, and delivered to her a worthless bond secured by a worthless mortgage."

At the trial, use-plaintiff offered in evidence those portions of the statement of claim which were admitted,

not including Paragraph 8A; introduced the official bond, and the record of default judgment against the personal representative of the principal, and rested. The surety offered no evidence, but requested binding instructions in its favor. The trial judge directed a verdict for the Commonwealth against the surety for $10,000, the penal sum of the bond, with interest, and for use-plaintiff in the amount of $2,241.34. The surety's motions for a new trial and judgment n. o. v. were overruled, and judgments were entered by the court en banc upon the verdict. These appeals by the surety followed.

The sole question before this Court is whether the default judgment against the principal is conclusive, or prima facie, evidence of the surety's liability upon the official bond. It is conceded by appellant that a judgment against a principal upon the merits, establishing official misconduct, is conclusive against the surety in an action upon an official bond. In *Commonwealth v. Fidel. & Dep. Co.*, 224 Pa. 95, 102, the rule is stated: "As to . . . bonds to insure the faithful performance of duty and to secure a proper accounting by persons in fiduciary relations, the rule of our cases seems to be that a judgment against the principal is conclusive against his sureties as to his misconduct and failure to properly account." And the judgment is conclusive against them not only as to the misconduct or neglect of duty on the part of the principal, but also as to the amount of damages sustained by the plaintiff: *Evans v. Commonwealth*, 8 Watts 398, 399; *Masser v. Strickland*, 17 S. & R. 353, 357; *Com. ex rel., to use, v. DeLuca*, 131 Pa. Superior Ct. 451, 456. Similarly, where the official bond is conditioned upon the recovery of judgment against the principal, or upon the declaration of a forfeiture, the rights of the surety will be concluded by the entry of such judgment against him, or by such forfeiture: *Com. v. Eclipse Lit. and Soc. Club*, 117 Pa. Superior Ct. 339, 352; *Commonwealth v. McMenamin*, 122 Pa. Superior Ct. 91, 100.

The rationale of these decisions is that a plaintiff should not be compelled to prove a second time the facts upon which the surety's liability is predicated, facts which have already been established in an action against the principal. Obviously, unless the first judgment against the principal is collusive or otherwise fraudulent, the surety is not harmed by the application of this rule. And, in most instances, the surety would have an opportunity to defend in the action against the principal, and thus protect itself fully. See *St. Paul Mercury Indemnity Co's. App.*, 325 Pa. 535, 539-540.

There is, however, some authority in this jurisdiction for an extended application of the rule to include among those judgments binding on the surety judgments obtained by confession *(Eagles v. Kern,* 5 Wharton 143, 144), and by default *(McMicken v. Commonwealth,* 58 Pa. 213). It may be questioned whether these cases stand upon the same firm foundations of equity and expediency that support those in which there is an adverse judgment against the principal upon the merits. Where judgment is entered against the principal by confession or default, upon pleadings which set forth solely acts of official misconduct for which the surety would be liable upon the bond, and where the surety has failed to avail itself of an opportunity to enter a defense in the name of the principal, there can be no injustice in giving the judgment the effect of conclusive, or at least prima facie, evidence against the surety. While the American courts are of several views upon this point, the great majority hold that a default judgment against the principal is prima facie evidence of the surety's liability upon the bond. See Stearns, Law of Suretyship (4th ed.) pp. 300-305. However, as the Pennsylvania decisions last cited are clearly distinguishable from the present case, there is here no necessity to pass upon the correctness of the view which they assert.

In her statement of claim as amended, use-plaintiff has set forth in reality *two* grounds for action against

the principal in assumpsit. In the first place she avers that Turner, acting in his *individual* capacity, received a sum of money from her for investment. He embezzled this sum, and concealed his misconduct by delivering to her forged documents and by paying "interest" upon her supposed investment. Entirely without regard to whether he abetted this fraud by an act in his official capacity, he, and his personal representatives, would have been liable to use-plaintiff for the money which he embezzled. But use-plaintiff has also alleged that she sustained her loss through reliance upon the act of Turner in his *official* capacity, in falsely acknowledging and certifying the execution of the forged mortgage bond and warrant. It is her contention that she was thereby induced not to demand the return of her money, and that it was still in the possession of Turner when the bond and warrant were delivered to her.

The surety undertook no responsibility for the acts of Turner as an individual. The condition of the official bond was: "That if the said John J. Turner appointed and commissioned Notary Public as aforesaid, shall and does well and truly, and faithfully in all things execute and perform the duties of said office of Notary Public . . . then this obligation to be void, or else to be and remain in full force and virtue." The surety's liability was thus strictly limited to losses occasioned by its principal's acts of official misconduct. See *Commonwealth v. Swope,* 45 Pa. 535, 536; *Com. to use v. Keller,* 106 Pa. Superior Ct. 458, 461. In *Commonwealth v. Hoffman,* 74 Pa. 105, action was brought upon a sheriff's recognizance to recover overpayments of fees. Use-plaintiff offered in evidence the report of the county auditors to establish the amount of the improper payments and the failure of the sheriff to return them. Holding that the sureties were not liable, Justice SHARSWOOD said (p. 110): "No doubt the sheriff is personally liable to the county in an action for money had and received. But how is his neglect or refusal to pay the debt, which he

owes, any violation of his official duties? . . . No limits can be assigned to the liabilities of the sureties if such a construction of the condition of the recognizance should be supported. They might as well be held responsible if the sheriff should break into and rob the fireproof in the office of the county treasurer." With regard to the auditors' report it was stated (pp. 111-112) : "Whether the report had the effect of a judgment and was conclusive upon the sheriff of such an amount owing by him, might be very material in another form of action, but as it showed on its face that he was charged, not with anything for which he was liable officially,—it had nothing to do with the issue."

The surety concedes in the present case that its principal was liable personally to use-plaintiff. This much, at least, was clearly established by the judgment against his executrix. Obviously, however, the surety had no interest in the individual misconduct of its principal and could have entered no defense for him in his individual capacity. Its only concern was with the question of whether or not use-plaintiff suffered a loss through an act of official misconduct. This was averred by use-plaintiff in Paragraph 8A of the statement of claim and flatly controverted by the surety in its affidavit of defense. The surety thus placed in issue the fact upon which its liability depended, and the burden was upon use-plaintiff to prove its existence. As principal and surety were sued jointly, and as their interests were identical with regard to the charge of *official* misconduct, the surety's denial that the use-plaintiff suffered any loss through his notarial act inured to the benefit of the principal. See *O'Neal v. O'Neal*, 4 W. & S. 130, 131; *Noble's Administrator v. Laley*, 50 Pa. 281, 284; *Commonwealth v. McCleary*, 92 Pa. 188, 191. It is merely a quibble to say that the surety should have filed an affidavit of defense separately for the principal with respect to the latter's liability in his official capacity. The issue was clearly and effectively raised in its own

pleadings. It is apparent, therefore, that the default judgment against the principal, while valid and subsisting proof of the principal's individual liability, cannot be treated as conclusive, or even prima facie evidence of liability in his official capacity against the surety.

The divergence of interests of the principal and surety upon the dual theory of liability set forth in the statement of claim distinguishes this case from *McMicken v. Commonwealth,* and *Eagles v. Kern,* both supra. In the former case the action was a scire facias upon a sheriff's recognizance naming the officer and his sureties as defendants and averring that he, as sheriff, had received sums of money on execution upon use-plaintiffs' judgment, which he had neglected to turn over to them. This was an act of official misconduct. In the latter case, the principal, a constable, had confessed judgment for money collected by him, as constable, in a suit between the plaintiff and another, which he had not surrendered to plaintiff. This Court expressly stated that the judgment confessed was for an "official default".

Since the default judgment against the principal in the court below established only the individual wrongdoing of the notary, as agent for use-plaintiff, there being no denial of that, it was incumbent upon her to show that she had been injured by his official misconduct in order to impose liability upon the surety. The mere fact that the mortgage papers delivered to her bore a false certification, which the surety admitted, was not sufficient to establish the principal's liability in his official capacity. She had entrusted him with her funds in July. In August, he gave her the forged documents, containing his false acknowledgment. Consequently, she parted with her money, not in reliance upon the notarial certification, but upon her confidence in Turner as an individual. It is true that in Paragraph 8A the use-plaintiff averred that she refrained from demanding the return of her money because of her reliance upon the

acknowledgment, and that had she then done so she could have recovered it, but this allegation was denied by the surety, and it was not offered in evidence. No proof of such reliance was introduced by the use-plaintiff and it appears in none of the admitted averments of her pleadings. Without it, her case against the surety was not established. In *Shay v. Schrink*, 335 Pa. 94, this Court held that no liability could attach to a notary public for a false acknowledgment unless the plaintiff showed that he relied thereon to his detriment. It was stated (p. 100) : "Neither can liability be shunted to . . . the notary public, because, while she acted reprehensibly in certifying to the acknowledgment of the power of attorney as having been made personally before her, the Trust Company, as has been stated, did not act in reliance upon it. The Company suggests that if it had not been for the forged power of attorney Shay could not have satisfied the mortgage of record and the Company would thus have been warned and might have been able to prevent him from depleting his deposit account. There is no evidence, however, to indicate that the entire fund had not been withdrawn by Shay before February 9, and therefore no basis for a claim on the part of the Company that it was in any way harmed by the false acknowledgment, which, under such circumstances, was not a proximate or even a contributing cause of the loss." And, in the present case, there is no evidence upon the record that Turner had not disposed of the entire sum embezzled by him before the use-plaintiff saw the certification. See also *People, for use of Young, v. Nederlander*, 177 Mich. 434, 143 N. W. 753; *American Surety Co. of New York v. First Nat. Bank*, 203 Ala. 179, 82 So. 429; *Ellis v. Hale*, 194 Pac. 155 (Mont ).

Because of the absence of these essential elements of proof, use-plaintiff's case is distinguishable from *Hemet Home Builders Ass'n v. Wells*, 3 Cal. App. (2d) 65, 39 Pac. (2d) 233; *Harz v. Gowland*, 126 La. 674,

52 So. 986, and *State v. American Surety Co. of New York,* 254 S. W. 561 (Mo. App.), in each of which the plaintiff parted with his money *in reliance* upon false notarial certification. The fact of reliance was expressly found. In *Lacour v. National Surety Co. of New York,* 147 La. 586, 85 So. 600, also cited by the use-plaintiff, the court held that the notary public obtained the funds which he embezzled in his *official* capacity, and that they "were not deposited with him to be invested by him as the agent of the plaintiff". In the present case it is clear that use-plaintiff entrusted her moneys to Turner in his individual capacity, and that he was to act as her agent in investing them for her. In this respect, therefore, the present case more closely resembles *Nolan v. Labatut,* 117 La. 431, 41 So. 713, which is in accord with our conclusion.

Use-plaintiff insists that the making of the false acknowledgment was an integral part of Turner's scheme to defraud her, and therefore that the entire transaction must be regarded as having been accomplished by means of his office. See *Hungate v. Wells,* 129 Cal. App. 133, 18 Pac. (2d) 64, in which it was found as a fact that the notary, at the time he received the funds entrusted to him, had conceived a plan to defraud plaintiff by misuse of his notarial powers. That fact was not shown, however, in the present case. There is no averment that use-plaintiff relied upon Turner's official capacity in giving him her money to invest, or that he had formed an intention to defraud her at that time by the execution of a false acknowledgment. In view of the lapse of time between his receipt of the money and the delivery of the forged papers, it cannot be assumed in the absence of proof that the transactions were integrated.

The judgments of the court below, entered against appellant in favor of the Commonwealth and use-plaintiff, must be reversed, but because use-plaintiff may have available evidence in support of her averment that

she was injured through reliance upon the notarial certification of the forged mortgage bond and warrant, which she failed to present as a result of the ruling upon her request for binding instructions, a new trial will be awarded to afford her an opportunity to do so. See *Thommen v. Aldine Trust Co.*, 302 Pa. 409, 420; *Daniels v. Atkins*, 95 Pa. Superior Ct. 86, 92.

Appellant has not pressed its assignment of error that the verdict for the Commonwealth is excessive, and in view of our conclusion, it need not be here considered.

The judgments of the court below are reversed with a venire facias de novo.