# Commonwealth, to use of Miller, Appellant, *v.* Doak et al.

Argued April 9, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument as to Appeal, No. 71, refused June 29, 1945.

*George P. Williams, Jr.,* with him *Orr, Hall, Williams & Baxter,* for appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for Indemnity Ins. Co. of North America, appellee.

*Henry W. Balka,* for Doak, appellee.

OPINION BY MR. JUSTICE LINN, May 23, 1945:

This is an appeal by the use-plaintiff from the entry of judgments n. o. v. in her suit against the defendant, Doak, a notary public, and against the surety on his official bond, to recover the $4,000 expended by her in reliance on the defendant notary's false certificate of acknowledgment of a mortgage. Defendants put in no testimony. The arguments of the parties have reduced the question for decision to whether there is evidence supporting the jury's finding that plaintiff's money was paid in reliance on the genuineness of the false certificate. Since plaintiff succeeded with the jury, we must consider the oral evidence in the light most advantageous to plaintiff: *Boyle v. R. R. Co.,* 346 Pa. 602, 31 A. 2d 89. We shall state facts on which the jury in dealing with the evidence may have based its verdict.

The plaintiff, having consulted Harmon Webb, an attorney, about some fire insurance, informed him that she desired to invest $4,000 secured by mortgage. He

recommended a lot in Media, 17 Pennock Place, improved with a house, etc. She examined it and stated that she would make the loan. The title to that and to adjacent property was in a corporation called White Heather Company of which it appears that the shareholders were Webb,[1] another attorney named Edward L. F. Clarke,[1] and their stenographer, Edith Pierce. Webb prepared or caused to be prepared what purported to be a deed from White Heather Company to Edwin Jackson, and a draft of a mortgage by Edwin Jackson to the plaintiff. The land described in the deed and in the mortgage was not 17 Pennock Place, but an unimproved lot, number 12 Pennock Place, of much less value. There was no such person as Edwin Jackson. An application for title insurance was made to the Commonwealth Title Company of Philadelphia, the application providing for the issue of title insurance to the plaintiff and an owner's certificate to Edwin Jackson. This application is on a form prepared and used by the title company. On this form, the title company states: "In order to protect the insured from loss, by reason of defects arising between this date and the final settlement, it is recommended that the consideration money be deposited with the Company; and, if the amount be sufficient, the Company will then pay off the incumbrances." The company also states: "And when the transaction is settled and the papers recorded *(which recording should be done by the Company)*, a Policy of Insurance of Commonwealth Title Company of Philadelphia for $2000 will be issued, in conformity with Application No. 854558."

The jury was justified in finding that Webb's authority to act for plaintiff was limited. She did not entrust any money to him. She protected herself against embezzlement or other misconduct by him, by obtaining from her bank a cashier's check for $4,000 drawn to the

---

[1] Webb and Clarke are no longer members of the bar; both were sent to jail in Delaware County.

order of the Commonwealth Title Company. This check she handed to Webb for delivery to the Title Company; for that purpose he was a mere messenger; he delivered the check, whereupon his connection with the disposition of her money ceased. Answering a question on cross-examination as to whether she had placed "absolute confidence" in Webb, plaintiff said, "No, I placed absolute confidence in the Commonwealth Title, because I thought the check was made out to them and no one could use it but them for the purpose it was supposed to be used for . . ." She also testified that she thought Webb was "working through Mr. Makiver" who had been her attorney but who, at the time, was ill and had recommended Mr. Webb, who had offices in the same suite. The money was then in the hands of the Title Company in accord with its notation on the application, quoted above; the title company became plaintiff's agent not only properly to distribute the money but also to record the mortgage. Recording was necessary to evidence the lien securing plaintiff's loan; recording was also necessary to protect the title company as insurer that the mortgage was a first lien. The insurance policy issued recites the payment of $18.75 to the company.

As the title company required that it make the settlement, a time was fixed for settlement at its office in Philadelphia. It happens that Doak, the notary public, was a settlement clerk employed by the company. It is necessary to distinguish between Doak's official acts as notary public and the duties of his employment as settlement clerk. As a notary public he acted pursuant to his commission from the Governor. The corporate defendant was his surety for the faithful performance by him of his official duty. The plaintiff did not appear at the settlement. Webb was there and presented a deed from White Heather Company to Edwin Jackson and a draft of the mortgage from Edwin Jackson to the plaintiff. This mortgage was not acknowledged. Defendant Doak, a notary public, certified on the mortgage: "On

the 15th day of April Anno Domini 1942, before me, the subscriber, a Notary Public for the Commonwealth of Pennsylvania, residing in the Personally appeared the above-named Edwin Jackson and in due form of law acknowledged the above Indenture of Mortgage to be his act and deed, and desire the same might be recorded as such." The certificate was false. No Jackson appeared. No one was presented as Edwin Jackson. No acknowledgment was taken.[2] If the notary had called for the production of Jackson, it would have appeared that there was no Jackson and the plaintiff would have received back her $4,000 deposited for the purposes of the settlement. Failure to perform the duties of his office constituted a breach of the condition of the bond that Doak would ". . . well and truly, and faithfully in all things, execute and perform the duties of said office of Notary Public, according to law . . ."

Whether plaintiff's deposit of $4,000 was disbursed by the title company in reliance on the false acknowledgment depends on what the jury may have found to have occurred at the settlement. A "Statement of Settlement" was prepared on behalf of the title company. It recited that $4,000 had been deposited by the plaintiff for distribution. It contains the written approval of Webb as attorney for White Heather Company and also as attorney for Edwin Jackson. Mr. Jordan, vice president of the title company, who was called by the plaintiff, testified, "There isn't any approval for Mrs. Miller." Before her money could be laid out in the mortgage, it was necessary that the mortgage be acknowledged so that it might be recorded to accomplish the purposes stated above. The title company, therefore, in distributing the net amount shown for distribution on the State-

---

[2] In his charge to the jury, the learned trial judge said: "Now, there is no doubt that Doak was careless, . . . and if it were up to me I would revoke his notary public commission without a word, because under no circumstances did he have a right to do what he did."

ment of Settlement, necessarily acted in reliance[3] on the certificate of acknowledgment, as it was not until the acknowledged mortgage was delivered that the plaintiff's money was distributable. The contention of the defendants is that plaintiff is bound by what her attorney, Webb, did, and that as he presented the unacknowledged mortgage apparently executed, though not acknowledged, by Jackson, that defendants are not responsible for the consequences of the official act of the notary. That contention must be rejected as contrary to well settled principles. Plaintiff is of course bound by what her agent did within the scope of his authority. Webb's earlier wrongful acts, which culminated in his presenting the draft of the mortgage, may have contributed to the fraudulent substitution of the unimproved for the improved lot as security, but plaintiff might not have been damaged by Webb's prior conduct, if the notary had done his duty. The jury could find that there were two torts. In presenting the fraudulently drawn mortgage, Webb was not acting within the scope of his agency for plaintiff; on the contrary, he was acting adversely to her and entirely for his own purposes, in circumstances in which plaintiff is not affected by Webb's knowledge of his wrongful conduct: Restatement, Agency, section 282; see, also, *Gunster v. Scranton Illum., Heat & Power Co.,* 181 Pa. 327, 37 A. 550, and cases following it. The verdict indicates that it was the notary's wrongful act which became the sole basis for the disbursement by plaintiff's agent, the title company, of her money deposited pursuant to the company's invitation for distribution by it at the settlement. Her money was not disbursed until after the false certificate of acknowledgment was made by a public official and delivered. This is not a case in which it

---

[3] The learned trial judge instructed the jury as follows: "The problem here is whether on reliance of his act, his careless act, she lost this $4,000."

could be found that money was paid to an agent for investment and by him put into a fraudulent mortgage thereafter delivered to his principal as in *Com., to use, v. Turner,* 340 Pa. 468 (see pp. 475-476), 17 A. 2d 352, relied on in the argument of the defendants.

It was several months before the mortgage was received back from the office of the recorder and delivered to the plaintiff; Webb supplied her with a policy of fire insurance on 17 Pennock Place, the property on which she had agreed to lend the money. The plaintiff did not discover the fraud until about six months afterward, when she immediately gave notice and made demand.

Something is said in the argument of appellees to the effect that Webb was Jackson and for that reason the mortgage was good on the property described in it, but those questions are not before us on this record.

The judgments are reversed and the record is remitted with instructions to enter judgments on the verdicts.