Commonwealth to use *v.* United States Fidelity & Guaranty Co. et al., Appellants.

544

Argued April 14, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

reargument refused June 7, 1950.

*Daniel Mungall, Jr.,* with him *Stradley, Ronon, Stevens & Young,* for defendant, appellant.

*George P. Williams, 3rd,* with him *Orr, Williams & Baxter,* for additional defendant, appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1950:

Through the machinations of one Bennewitt and the negligence of a notary public the use plaintiff, Willow Highlands Company, suffered a loss by the disbursement of its money on a forged mortgage. It instituted the present action against the United States Fidelity & Guaranty Company, the surety on the notary's bond.*

Bennewitt purporting to represent Charles and Kaethe Rose, owners of premises 5534 North 7th Street, Philadelphia, made application on their behalf to the use plaintiff for a mortgage loan in the amount of $8,500 to be secured by a first lien upon the premises. Application for title insurance was made to the Land Title Bank & Trust Company. W. C. King, a notary public, was employed by that company as a settlement clerk. Bennewitt appeared at the settlement and produced a mortgage on the premises bearing the forged signatures of the mortgagors. At his request King certified that Charles and Kaethe Rose had personally appeared before him and acknowledged the mortgage as their act and deed and desired that it might be recorded as such; as a matter of fact they had not so appeared nor had they any knowledge of the transaction whatever; indeed Charles Rose had been dead for several years. Bennewitt also produced at the settlement a letter addressed to the Land Title Company authorizing and instructing it to distribute to him the proceeds of the mortgage settlement; the signatures of Charles and Kaethe Rose to this letter were likewise forged although, another notary, T. Roland Madden, had certified thereon that they had sub-

---

* The use plaintiff held a policy of title insurance in the Land Title Bank & Trust Company, and that company paid the loss. Since, however, it is not a defense to an action for damages that the party injured has been indemnified for his loss by insurance the use plaintiff's rights in the present action are treated the same as if such indemnification had not been effected.

scribed their names to it before him. Prior to the settlement the use plaintiff had advanced the amount of the mortgage, $8,500, to the Land Title Company. King, as settlement clerk, disbursed this fund by a check drawn on the company to Bennewitt's order, which check was delivered to Bennewitt and subsequently endorsed and cashed by him.

The present action is to recover the sum of $3,000, the amount of the notary's bond. The surety brought King on the record as additional defendant. The use plaintiff moved for judgment on the pleadings; the court granted the motion and directed the entry of judgments in favor of the use plaintiff against the surety and in favor of the surety against the additional defendant. The defendants now appeal from those judgments, their contentions being that the false certificate of acknowledgments was not the proximate cause of the use plaintiff's loss, that the case should have been submitted to the jury to determine whether the money was paid out by the Land Title Company in reliance on King's false certificate or in reliance on the forged letter of authority to pay the mortgage proceeds to Bennewitt, and that the use plaintiff is barred from recovery because of its alleged contributory negligence.

Not only are all the essential, primary facts in regard to the transaction set forth in the pleadings but they are not in dispute; therefore the court below was justified in treating the controversy as involving only questions of law and not as one requiring submission to a jury for determination. That King's false certificate was not only a cause, but the proximate cause, of the use plaintiff's loss is clear beyond the necessity of discussion, for if that certificate had not been placed upon the mortgage instrument the Land Title Company would not have paid out the money to Bennewitt or to anybody else. A wrongful act may be the proximate cause of damage

even though other causes may have joined in producing the result.

Appellants invoke the principle that there can be no recovery in an action on a notary's bond for his negligence or misconduct in certifying to an acknowledgment of an instrument of title unless it be shown that the loss occasioned to the injured party was due to his reliance on the certificate. As illustrations of that principle they refer to the decisions in *Shay v. Schrink,* 335 Pa. 94, 6 A. 2d 522, and *Commonwealth, to use, v. Turner, Executrix,* 340 Pa. 468, 17 A. 2d 352. In each of those cases, however, the money was disbursed before the instrument bearing the false certificate of acknowledgment came into existence, or at least before it was presented, so that, of course, there could have been no reliance upon it in paying out the fund. The facts here are entirely different because it was only after the mortgage was apparently signed and duly acknowledged, and on the assumption that it was therefore a valid instrument, that the Land Title Company made distribution. The instant case is controlled by the decision in *Commonwealth, to use, v. Doak,* 352 Pa. 380, 42 A. 2d 826, where the facts were quite similar to those here present, and where it was said by Mr. Justice LINN (pp. 384, 385, A. pp. 828, 829) : "The title company, . . . in distributing the net amount shown for distribution on the Statement of Settlement, necessarily acted in reliance on the certificate of acknowledgment, as it was not until the acknowledged mortgage was delivered that the plaintiff's money was distributable." Appellants urge that King, in making distribution, could not have relied on the genuineness of his own certificate since he knew that the mortgagors had not in fact personally appeared before him, but this contention was answered in the *Doak* case, supra, where it was said (p. 383, A. p. 828) : "It is necessary to distinguish between Doak's official acts as notary public

and the duties of his employment as settlement clerk." King's knowledge of the illegal act he performed in his official capacity as a notary public is not to be imputed to the Land Title Company which employed him in his totally distinct capacity as a settlement clerk; it is a well established legal doctrine that an agent taking part in an illegal transaction will not be presumed to have communicated to his principal the knowledge so acquired. As notary public King acted as a public officer and on his own behalf, not as an employe of the Land Title Company; the Land Title Company, not being bound by the knowledge acquired by him as a notary, must be regarded as having paid out the use plaintiff's money in reliance upon his false certificate. Appellants contend that the use plaintiff's loss really resulted from the payment of the money by check to the order of Bennewitt instead of to Charles and Kaethe Rose, because, they claim, if the check had been made out to the order of the mortgagors the fraud would have been discovered and the loss prevented. What would have happened in that event, however, is a matter of pure speculation; it is to be noted that in *Land Title Bank & Trust Company v. Cheltenham National Bank,* 362 Pa. 30, 66 A. 2d 768, in which case Bennewitt also figured, the check was made payable to the mortgagor but, being delivered to Bennewitt for transmission, he forged the endorsement of the payee and cashed the check. The important point is that, without a certificate of acknowledgments attached to the mortgage, the money here would not have been paid out at all and the use plaintiff's loss could not have occurred. Even if Madden's notarization of the letter of authorization contributed to the success of Bennewitt's nefarious enterprise and facilitated its accomplishment that would not absolve these defendants from liability, they being primarily responsible for the loss.

In regard to appellants' contention that the use plaintiff was guilty of contributory negligence by failing to

make inquiries concerning the existence of the mortgagors and Bennewitt's alleged representation of them, it is sufficient to refer to the rejection of a similar argument in the *Cheltenham National Bank* case, supra, where it was pointed out (pp. 37, 38, A. p. 771) that a title company is not obliged to suspect that a notary public has made a false certificate of acknowledgment; therefore, it is not required to make an investigation for the purpose of verifying it, nor to insist upon the actual appearance of the mortgagor at the settlement.

Judgments affirmed.