## Commonwealth, to use, *v.* Maryland Casualty Company, Appellant.

Argued November 27, 1951.   Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Robert C. Kitchen,* with him *Richard A. Smith* and *Robert S. Ingersoll, Jr.,* for appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 7, 1952:

This is a proceeding to recover on the bond of a Notary Public. It arises from still another of the "Bennewitt" mortgage transactions.[1]

The complaint filed by the use-plaintiff, Willow Highlands Company, averred that use-plaintiff had agreed to advance the sum of $5500 on a loan to Herbert and Mary L. Leach to be secured by a first mortgage on premises owned by them at 5803 North 7th Street, Philadelphia; that H. Richard Bennewitt made application to the Land Title Bank & Trust Company for title insurance on the mortgage; that the use-plaintiff delivered to the Trust Company its check in the sum of $5500 to cover the amount of the mortgage, which check was cashed by the Trust Company and deposited in its settlement accounts and allocated to the mortgage settlement on the premises; that at the settlement for the mortgage Edward W. Sliker, a Notary Public, certified that Herbert and Mary Leach swore and subscribed before him that they were the owners of the premises; that the purported signatures of Herbert and Mary Leach to the affidavit were forgeries; that at the settlement Sliker also certified as a Notary Public that Herbert and Mary Leach personally appeared before him and acknowledged the mortgage upon the premises to be their act and deed and desired that it might be recorded as such; that the mortgage was thereupon recorded in the office of the Recorder of Deeds in and for the County of Philadelphia; that the purported signatures of Herbert and Mary Leach on the mortgage were forgeries; that neither of them

---

[1] For former cases see *Land Title Bank & Trust Co. v. Cheltenham National Bank*, 362 Pa. 30, 66 A. 2d 768; *Commonwealth to use v. United States Fidelity & Guaranty Co.*, 364 Pa. 543, 73 A. 2d 422.

had personally appeared before Sliker and had never made any acknowledgment before him of the mortgage; that the mortgage was totally invalid and void; that in accordance with the settlement the Trust Company issued its settlement check payable to the order of Herbert and Mary Leach in the sum of $5417.75 and gave it to Bennewitt for delivery to Herbert and Mary Leach; that Bennewitt forged the endorsements of Herbert and Mary Leach on the check, added his own endorsement to the forgeries, and received from the Trust Company the amount of the check; that by reason of these facts the use-plaintiff sustained a loss of $5500, against which it allowed a credit in the sum of $1133.40 representing a dividend paid by the bankrupt estate of Bennewitt on the claim of $5500. On the basis of these averments the use-plaintiff claimed of Sliker and Maryland Casualty Company, the surety on his official bond, the sum of $4366.60 with interest.

Maryland Casualty Company filed an answer to the complaint denying that the use-plaintiff sustained the loss claimed by it, and in New Matter it averred that the payment made by the Trust Company's banking department to Bennewitt on his forged endorsements on the settlement check, which had been drawn by its real estate department, was not in fact charged by the banking department against the real estate department nor by the latter against the special deposit of the use-plaintiff; that the use-plaintiff's deposit with the real estate department of the Trust Company was not spent and the entire deposit was refunded by the real estate department to the use-plaintiff, so that the latter suffered no loss whatever in the subject matter of this suit; that the loss sustained by the Trust Company by reason of its payment to Bennewitt was insured under a policy issued to the Trust Company by the Indemnity Insurance Company of North America, which paid the amount of the loss in full to the Trust

Company and was therefore the real party in interest; and that the claim filed in the bankruptcy proceedings of Bennewitt was filed in the name of the Trust Company and the dividend of $1133.40 was paid to and received by the Trust Company for the account of the Indemnity Insurance Company of North America.

The use-plaintiff filed preliminary objections to this New Matter and moved for judgment on the pleadings. The court entered judgment against both defendants in favor of the Commonwealth for the penal sum of the bond, $10,000, and judgment in favor of the use-plaintiff against both defendants for the amount of the mortgage less the recovery of the dividend from Bennewitt's bankrupt estate, or $4366.60, with interest. From those judgments the defendant Sliker and Maryland Casualty Company appeal.

The immediate, obvious conclusions to be derived from this record are: (1) that Sliker violated the condition of his official bond in not faithfully performing the duties of his office,—a condition prescribed by the Act of June 10, 1931, P. L. 480; (2) that Sliker and his surety thereupon became liable for any and all loss occasioned thereby; and (3) that such a loss occurred by reason of the payment of $5417.75 by the Land Title Bank & Trust Company to Bennewitt. It is not a valid claim on the part of Sliker and the surety on his bond that the money paid to Bennewitt was paid in reliance on the latter's forged endorsements on the check rather than on his forged signatures and false acknowledgments to the mortgage. Sliker's act in making the false certificate of acknowledgment was an efficient, proximate cause of the loss; it is not material that it may not have been the sole cause. It is true that there can be no recovery in an action on a notary's bond for his misconduct in falsely certifying

to an acknowledgment of an instrument of title unless it be shown that the loss occasioned to the injured party was due to the latter's reliance on the certificate. But here, without the false certificate the money would not have been paid out at all and the loss would not have occurred since it was not until the mortgage was acknowledged and delivered that the money would have been distributable. Even, therefore, if Bennewitt's subsequent forgeries facilitated the accomplishment of his fraud they did not absolve these defendants from liability; it was Sliker who was primarily and basically responsible: *Commonwealth to use of Miller v. Doak,* 352 Pa. 380, 384, 385, 42 A. 2d 826, 828, 829; *Commonwealth to use v. United States Fidelity & Guaranty Co.,* 364 Pa. 543, 546, 547, 548, 73 A. 2d 422, 424, 425.

This brings us to the real question presented by the pleadings, which is, not whether there was a loss for which defendants are responsible, but who suffered that loss? If the Trust Company had paid to Bennewitt the moneys of the use-plaintiff there would, of course, be no doubt but that it was the use-plaintiff which would have had a cause of action against the defendants, and if the Trust Company had subsequently reimbursed the use-plaintiff for the latter's moneys improperly paid to the wrong party it would have been subrogated to the use-plaintiff's rights. Or if the Trust Company had issued its policy of title insurance to the use-plaintiff and had made payment to it in performance of its obligations thereunder because of the mortgage being a void instrument the Trust Company would likewise have been subrogated to the latter's right of action. But neither one of those assumed situations appears from the facts set forth in the pleadings. On the contrary, it is expressly stated in the Maryland Casualty Company's New Matter that the use-plaintiff's money, which had been specially deposited in the

real estate department of the Trust Company, was not in fact disbursed by the Trust Company but that the banking department had paid out its own moneys and the payment was not charged to the real estate department nor against the use-plaintiff's special deposit, which, not having been spent, was returned by the real estate department to the use-plaintiff; in other words, the use-plaintiff was not caught in the toils of the Bennewitt transaction at all. The situation, therefore, is clearly distinguishable from that which existed in the *Doak* case, supra, or the *United States Fidelity & Guaranty Co.* case, supra, in each of which it was the mortgagee's money that was disbursed at the settlement. Here the use-plaintiff never suffered any loss because its funds were not used in the transaction but were returned to it intact and unexpended. The money lost was that of the Trust Company, not that of the use-plaintiff, and therefore the use-plaintiff has no cause of action against the defendants. Nor can the Trust Company itself recover on any theory of subrogation, for even if it were a subrogee, which, under the facts pleaded, it is not, an alleged subrogee cannot recover in an action brought by the alleged subrogor unless the latter has a cause of action against the defendant, since it is on the subrogor's right of action that recovery must be based: *Howes v. Scott*, 224 Pa. 7, 12, 73 A. 186, 188; *Stern Mfg. Co. v. Smith*, 273 Pa. 39, 41, 116 A. 517, 518; *Grubnau v. Centennial National Bank*, 279 Pa. 501, 504, 124 A. 142, 143. Whatever cause of action the Trust Company has against the defendants must be asserted by it in its own name and in its own right.[2]

---

[2] The alleged interest of the Indemnity Insurance Company of North America arises solely through subrogation to the right of the Land Title Bank & Trust Company, and therefore it is not a necessary party to these proceedings; (Pa. R. C. P. 2002 (d)).

The Act of June 14, 1836, P. L. 637, which deals with official bonds, provides that the writ in such cases shall be issued in the name of the Commonwealth and that judgment shall be entered for the Commonwealth in the amount of the penal sum of the bond. Section 6, clause 9 of the Act provides that "The judgment of the Commonwealth as aforesaid shall remain for the satisfaction of all persons entitled to the benefit of the bond or obligation upon which it was rendered, . . . ." The Act also provides that any person to whom a cause of action shall have accrued on the bond may be made a party plaintiff in the suit and thereupon declare and set forth the breaches of condition of the bond to his particular injury. Accordingly it was said in *Land Title Bank & Trust Co. v. Cheltenham National Bank*, 362 Pa. 30, 42, 66 A. 2d 768, 773, that "the bonds of notaries public are payable to the Commonwealth . . . and any judgment thereon must be entered in favor of the Commonwealth as legal plaintiff, which judgment would remain for the satisfaction of all persons entitled to the benefit of the bond; this is because any other person having a cause of action thereon would have the right to be made a party and to establish his particular injury." And in *Commonwealth ex rel. Schuylkill County to the use of Buckley v. Horan*, 39 Pa. Superior Ct. 575, 577, 578, it was said: "A remedy is thereby given [by the Act of 1836] to any person for whose security the bond was executed. Only one action can be brought and that in the name of the Commonwealth at the suggestion of the person or persons in whose behalf the proceeding is commenced. As many persons as have separate rights of action may join in the action. . . . The judgment of the Commonwealth remains for the satisfaction of all persons entitled to the benefit of the bond. After judgment for the Commonwealth the remedy of a creditor is by scire facias and the assignment of breaches." It follows that the judgment rendered by

the court below in favor of the Commonwealth was properly entered, but the judgment rendered in favor of the use-plaintiff, Willow Highlands Company, cannot be sustained. Permission, if requested, should be given to the Land Title Bank & Trust Company to become the use-plaintiff in the Commonwealth's suit on the bond and to file a complaint as such, with the right of defendants, of course, to file answer thereto.

The judgment in favor of the Commonwealth is affirmed; the judgment in favor of the use-plaintiff, Willow Highlands Company, is reversed. The record is remanded to the court below for further proceedings in accordance with this opinion.