## Commonwealth to the use of Smolovitz et ux., Appellants, v. American Surety Company of New York.

Argued November 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Samuel M. Rosenzweig,* with him *Aaron Rosenzweig,* for appellants.

*William F. Donatelli,* with him *James M. McCandless,* for appellee.

OPINION BY GUNTHER, J., March 18, 1959:

This appeal was taken from the refusal of the court below to grant a motion for a new trial.

The action was in assumpsit brought by appellants against American Surety Company of New York on a bond conditioned for the faithful performance of the duties of a Notary Public. The jury rendered a verdict for appellee.

The record reveals that Gerald Smolovitz and Lois Eileen Smolovitz purchased a dwelling from Lucas Construction Company of which Harvey L. Lucas was president. To finance the deal a mortgage was secured from East Park Savings and Loan Association. The settlement took place on October 13, 1954 at the office of attorney Maurice J. Arnd, who represented the loan association. Present also at the closing were Samuel Rosenzweig, representing the appellants, and John E. Powell who was associated with Lucas Construction Company. Mr. Powell presented a Release of Mechanics Lien the affidavit of which was signed by Harvey L. Lucas, and the notary in the case was Miss A. M. Fehily. It now appears from the record that Mr. Lucas did not come before the notary at any time during the day of October 13, 1954 when the notarial seal and certification were affixed. The release of liens was completely filled with signatures of subcontractors and material men, several of which were the signatures of H. L. Lucas, Lucas Const. Co. Mr. Lucas who was to have made the affidavit according to the statement of the notary did not appear at any time in connection with this closing; the affidavit was made in his absence.

Sometime after October 13, 1954, seven Mechanic's Liens were filed against the property purchased by the appellants. The obligations amounted to $3,512.63 including interest and costs. It was subsequently disclosed that H. L. Lucas signed the releases of liens, but did not sign the affidavits to these releases. The signature, "Harvey L. Lucas", in the affidavit was not his signature, although the Notary Public certified that he was present, and that the signature was his. Did this improper certification breach the faithful performance condition of the bond upon which this suit was brought?

Appellee contends that there is no legal requirement that the release of liens be notarized. Appellants, however, argue that the distribution of the funds was made relying upon the affidavit as to the authenticity of the release of liens. The appellee presented no testimony; nevertheless, the jury returned a verdict in favor of the Surety Company.

Was the jury's verdict supported by the evidence? Was the affidavit taken by the notary a surplusage or did it impose a liability on surety based on faithless performance?

There is no question that the notary was acting in her official capacity, and that the bond covered faithful performance.

The important question before us, is whether the act of the notary was the proximate cause of the appellants' loss. The testimony reveals that Mr. Smolovitz would not have consented to the distribution of the fund without a proper affidavit. He relied on the affidavit in the release of liens in closing the transaction. Mr. Arnd, who represented the savings and loan association, testified that he required this release of liens to be sworn to before accepting it.

"Q. Without your title search and without the deliverance to you of this release of liens duly acknowledged, you would not have made distribution of the funds of Mr. Smolovitz and East Park Savings and Loan in this transaction? A. That is correct. Q. And you required that it be acknowledged before you accepted it? A. That's correct."

On page 50a of the record, there appears the testimony of H. L. Lucas.

"Q. And, in this particular case, I show you a release of liens which, with the affidavit attached to it, has written in ink a signature, 'Harvey L. Lucas.' I would like to call your attention to this signature. I

would like you to examine it and tell us whether or not that is your signature. A. That is not my signature. Q. Did you sign where that signature is located? A. No. Q. Were you personally present at the office of attorney M. J. Arnd at the settlement when this release of liens was presented to Mr. Arnd? A. No. Q. You were not at that settlement? A. No."

Appellants point out in their brief that the person subscribing to an instrument must be present and properly identified before certification can be made as to the authenticity of said signature or act; otherwise the notary fails in the faithful performance of his or her duty, and the surety is responsible for resultant losses. In the case of *Commonwealth, to use v. Maryland Casualty Co.*, 369 Pa. 300, 85 A. 2d 83, and discussed in 373 Pa. 602, 97 A. 2d 46, Justice STERN states:

". . . we held that Slicker's [the notary] act in making the false certificate of acknowledgment was an efficient proximate cause of the ultimate loss, even though it may not have been the sole cause. We said [in 369 Pa. at p. 305, 85 A. 2d at p. 86] that 'without the false certificate, the money would not have been paid out at all, and the loss would not have occurred since it was not until the mortgage was acknowledged and delivered that the money would have been distributable.' "

In the instant case, the deal would never have been closed without a sworn release of liens because the purchasers were well aware that the subcontractors had a certain time within which to file their notices of liens. While the appellee presented no testimony, appellants proved by a preponderance of oral and written evidence that the act of the notary was a proximate cause of the loss. The jury, in the teeth of this evidence, brought in a verdict in favor of the appellee. This verdict was unwarranted and must be set aside and a new trial granted.

Judgment is reversed and new trial granted.

WRIGHT, J., would affirm upon the opinion of Judge NIXON for the court en banc.