EDMUND CHESTER SIEKIERSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Siekierski v. Commissioner
Docket No. 12410-81.
United States Tax Court
T.C. Memo 1982-716; 1982 Tax Ct. Memo LEXIS 29; 45 T.C.M. (CCH) 313; T.C.M. (RIA) 82716; December 13, 1982. Edmund C. Siekierski, pro se. Russell K. Stewart, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181. [2] The Court agrees with the adopts his opinion which is set forth below. *30 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioner's 1978 Federal income tax in the amount of $715.00. After concessions by petitioner, the sole remaining issue for decision is whether petitioner received interest income in the amount of $2,751.00 from Burroughs Worldwide Corporation during 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner Edmund Chester Siekierski (petitioner) resided in Mount Laurel, New Jersey, when the petition in this case was filed. Petitioner and his wife, Valerie, were divorced in May 1973. At the time of their divorce they jointly owned real property in West Chester, Pennsylvania. Petitioner never signed any instrument or deed conveying his interest in the property to Valerie. In 1978, the property was held jointly by petitioner and Valerie and was the residence of Valerie. In April 1978, petitioner's former employer, the Burroughs Worldwide Corporation (Burroughs), received a pre-printed form entitled APPLICATION FOR REFUND OF CONTRIBUTIONS *31 (Application). This form was used when a member of the Burroughs Employees' Retirement Income Plan (Retirement Plan) with sufficient service desired a refund of contributions subsequent to termination of employment. The Application requested a refund of all of the contributions made by petitioner to the Retirement Plan, plus any interest thereon, and listed the West Chester, Pennsylvania, address. Acting on the Application, Burroughs issued a check in the amount of $6,732.25 on April 20, 1978. The check, which was made payable to petitioner, represented all of the contributions made by petitioner to the Retirement Plan, plus accrued interest in the amount of $2,751.00. Burroughs issued a Form 1099 indicating that petitioner had received $2,751.00 in interest in 1978. Petitioner did not report any interest income on his 1978 Form 1040A Federal income tax return. Respondent determined that three items of interest income should have been included in petitioner's gross income in 1978. Petitioner conceded two of these items, leaving in question the $2,751.00 amount paid by Burroughs. Petitioner filed an affidavit of forgery with Burroughs. This affidavit of forgery was disputed *32 by Burroughs after it discovered that the proceeds of the check were used to satisfy the joint mortgage obligation of petitioner and Valerie on the real property located in West Chester, Pennsylvania. Petitioner has taken no legal action to recover any interest in this real estate. Nor has petitioner taken any legal action to recover the $6,732.25 from Burroughs or Valerie. Petitioner's income in 1978 other than interest was less than $11,000.00. OPINION At the outset, we note that respondent's determination is presumptively correct. Petitioner bears the burden of proving that respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). At trial, petitioner testified that the signature that appeared on the Application requesting the withdrawal of his funds was a forgery. Petitioner also contends that the endorsement on the Burroughs' check was a forgery. He claimed that these acts were perpetrated by his ex-wife, Valerie, and other persons unknown. After carefully reviewing the record, we are not convinced that petitioner's signatures were forged. It is well established that this Court is not required to accept the *33 unsupported testimony of an interested witness. Burka v. Commissioner,179 F.2d 483, 485 (4th Cir. 1950), affg. a Memorandum Opinion of this Court dated June 15, 1949. The Application and the check bear signatures which closely resemble those which appear on other documents submitted by petitioner. We have carefully compared all of the signatures available and we are unable to conclude that the Application and the check were not signed by petitioner. At trial, petitioner stated that he did not have"a chance" to get to a handwriting analyst. Yet he claims he first learned of the withdrawal by calling Burroughs in February 1979. [3] We believe that petitioner had ample opportunity to obtain the services of a handwriting expert to protect the $6,732.25 credit in the Retirement Plan and to prove that respondent's determination herein should not be sustained. We also find it surprising, at the least, that petitioner did not bring any legal action against Burroughs or his wife especially since his 1978 income other than interest was less than $11,000.00. *34 Another factor which we must consider is that the Application bears the stamp of a Notary Public. The act of notarization is more than a mere formality. [4]The Supreme Court of Pennsylvania has observed that the essence of the act is "that the Notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution." In Re Bokey's Estate,412 Pa. 244, 194 A.2d 194, 198 (1963). Petitioner was questioned why he did not contact the Notary Public as to who signed the Application. In response he stated that "it just seemed to me that something of that sort had been arranged, that my contacting him probably would not make any difference anyway. I just did not know who else was involved in getting the authorization signed." Petitioner suggests that the Notary Public may have been acting in concert with petitioner's ex-wife in committing a forgery. We refuse to subscribe to the possibility of such illegal activity by the instant Notary Public based solely on petitioner's unpersuasive conjecture. *35 After carefully reviewing the entire record, we find that petitioner has failed to prove that his signatures were forged and that he did not receive the benefit of the check from Burroughs. Welch v. Helvering,supra; Rule 142(a). Accordingly, the $2,751.00 portion of the check representing interest must be included in petitioner's 1978 gross income. Section 61. Assuming, arguendo, that the signatures on the Application and the check were in fact forgeries, the result would still be the same. The application of the Burroughs' check to petitioner's mortgage obligation provided him with an immediate benefit and he received income to the extent of the interest portion of the Burroughs' check. Poczatek v. Commissioner,71 T.C. 371 (1978). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that rule are not applicable in this case.↩
3. Although petitioner alleges that he never received the Form 1099 issued by Burroughs, we observe that such a form normally would have been issued by January 31, 1979.↩
4. Knowingly certifying a false signature could subject a Notary Public to liability for a resulting loss under Pennsylvania law. Commonwealth v. American Surety Co. of New York,188 Pa. Super. 513, 149 A.2d 515 (1959); Commonwealth v. Maryland Cas. Co.,369 Pa. 300, 85 A.2d 83↩ (1952).